## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE DIVISION

| | |
|---|---|
| Ward Adventures, LLC, ) | |
| ) | CIVIL ACTION NO. 3:05-CV-236 |
| Plaintiff, ) | (Phillips/Guyton) |
| ) | |
| vs. ) | |
| ) | |
| Buddy Gregg Motor Homes, Inc. ) | |
| and Country Coach Destinations, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND OPINION

The matter before the Court involves an allegedly defective motor home. The plaintiff's claims are based upon contract principles, express and implied warranties, the Magnuson-Moss Warranty Act ("MMWA"), and the Tennessee Consumer Protection Act ("TCPA"). The defendants have filed motions for summary judgment [Docs. 14, 16, and 26], and parties have been given sufficient time to file responses and replies. For the reasons that follow, defendants' motions for summary judgment are **GRANTED in part** and **DENIED in part**.

### I. Summary of the Facts

As the law requires, all disputed facts and inferences are resolved most favorably

for the movant. Furthermore, the Court merely provides an abridged summary of facts for the purposes of this opinion.

The motor home subject to this suit was manufactured by Country Coach, Inc. ("CCI").[1] On or about May 2, 2000, CCI sold the subject motor home to LazyDays RV Supercenter ("LazyDays") in Florida. Three days later, the motor home was sold to the first retail customer.

The motor home was accompanied by a limited warranty from CCI. According to CCI's written limited warranty, CCI agreed to cover the house portion of the motor home for the first twelve months after the original retail purchase date, or on or before May 5, 2001. This warranty applied to "covered defects" as defined in the warranty. The warranty did not, however, apply to component parts manufactured by other companies, such as the engine, transmission, generator, leveling jacks, water heater, brakes, suspension components, furnace, windows, and doors. Further, CCI agreed, by written warranty, to cover the chassis portion of the motor home for the first twenty four months after the original retail purchase date, or on or before May 5, 2002. This written limited warranty also applied to "covered defects," but likewise excluded components manufactured by other companies. In addition, front-end alignments were expressly excluded from the warranty coverage. Both the house and chassis portions of the written limited warranty disclaimed all implied warranties, including an implied warranty of merchantability. The written warranty articulated, however, that in states where this disclaimer is not enforceable, any implied

---

[1] It appears that Country Coach, Inc. has been misidentified as "Country Coach Destinations."

warranty is limited to the duration of this written warranty where permitted by law.

On or about April 29, 2002, plaintiff Ward Adventures, LLC ("Ward Adventures ")[2] agreed to purchase the subject motor home from Buddy Gregg Motor Homes, Inc. ("Buddy Gregg") in Knoxville, Tennessee. The cost of the motor home totaled approximately $300,000.00, including taxes, fees, and other charges. Buddy Gregg was to prep the motor home, which included fixing a scratch in the back, aligning the tires, putting new tires on the front end of the coach, replacing china crystal, and installing a satellite system. With respect to the front end alignment, Buddy Gregg sent the motor home to Tennessee Tire, a Knoxville Company, to perform this task. After completion of the repairs, the motor home was formally sold to Ward Adventures on May 7, 2002.

At the time of the purchase, both written manufacturer warranties from CCI had expired. As to any warranties to be offered by Buddy Gregg, the sales agreement states that the motor home is purchased "As Is." Further, Buddy Gregg asserts that, in the process of selling the motor home, its salesmen, namely Rob Cunningham ("Cunningham") and/or Doug Larson ("Larson"), expressly advised the plaintiff that there was no warranty and that the motor home would be purchased "As Is." However, plaintiff avers that certain representations were made to plaintiff by Buddy Gregg. These representations, allegedly made by Cunningham and/or Larson, include the following: (1) the motor home in question

---

[2]Ward Adventures is actually a company created by Joan Pietrowski as a vehicle to purchase the motor home at a better price. Joan Pietrowski is married to Tony Pietrowski. It appears that Mr. Pietrowski has had experience in owning motor homes. The Coachman Concord was his tenth purchase.

was in perfect condition; (2) "Buddy Gregg only takes in and sells coaches that are reputable, that are top of the line coaches, and if they take a coach that doesn't meet their inspection or walk through or everything else, they wholesale them;" (3) that "they don't fix a piece of junk and sell it;" (4) the subject coach was going to last for the rest of their lives; (5) the motor home was a fine motor home and would last hundreds of thousands of miles.

Although, there is no evidence presented that CCI made any warranties regarding the subject motor home in its pre-owned state, plaintiff states that in purchasing the motor home, it also relied upon the representations of CCI, through sales agent Robert Lee ("Lee"). Apparently, Lee stated that CCI's coaches would last a lifetime and so forth at a trade show approximately two years before the purchase of the pre-owned motor home by plaintiff. Further, the plaintiff avers that it relied upon the advertisements and promotional literature of both defendants.

The Pietrowskis began experiencing problems with the motor home immediately after the purchase date. Alleged defects involve the front end alignment, tires, generator, furnace, side windows, windshield, leveling jacks, airline brakes, electrical system, and satellite system. The record sets forth a number of repairs and servicings of the subject motor home. As to the alignment, in separate instances, both CCI and Buddy Gregg had an alignment performed on the motor home. Thereafter, in February of 2003, the plaintiff was allegedly advised by LazyDays, during a servicing, that the front end of the motor home had never been aligned. At that time, LazyDays performed the alignment and

repaired other troubling problems in the Fall of 2003, including the furnace and generator, which plaintiff asserts the defendants were supposed to have fixed.

Plaintiffs' assertions against the defendants include a duty on part of the defendants to disclose the defective condition of the motor home; that the motor home meets the substantial impairment test under Tennessee law as being defective; that it incurred expense in fixing the motor home; that it was given warranties by both defendants through verbal representations of defendants' agents and defendants' advertisements; and that the defendants did not successfully repair the defects, engaging in deceptive and unfair trade practices. In response, the defendants state that the plaintiff (1) purchased a two-year-old, used motor home "As Is," for $285,000, (2) at a time when the manufacturer's twelve-month limited warranty had long since expired, (3) drove it for approximately 30,000 miles over a two-year period, (4) encountered routine maintenance items, (5) conveyed it to its sole member who thereafter (6) owned it for another two years but ultimately traded it to a Michigan dealer for a trade-in value of $170,000, (7) where it now sits for sale at the price of $255,000. Defendants assert that the plaintiff does not have supporting evidence of viable legal claims and that the plaintiff unjustifiably attempts to hold the manufacturer and seller of the used motor home liable for normal wear and tear repair costs it allegedly paid over the two-year period of ownership. Further, defendants move for the various claims to be dismissed based upon statute of limitation grounds.

On May 5, 2005, the plaintiff instituted this lawsuit against CCI and Buddy Gregg in

this District Court.[3] The plaintiff's amended complaint[4] alleges several theories of liability against the defendants: (1) breach of contract; (2) breach of express warranty; (3) breach of implied warranty of merchantability; (4) violations of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-104 and 109; and (5) breach of warranty pursuant to 15 U.S.C. §2310.

## II. Motion for summary judgment standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted by a court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. A court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir.1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).

Once the moving party presents evidence sufficient to support a motion under Rule 56 of the Federal Rules of Civil Procedure, the nonmoving party is not entitled to a trial

---

[3]The Pietrowskis had previously filed virtually the same action with the United States District Court Northern District of Ohio Western Division. The Ohio District Court dismissed the action for lack of personal jurisdiction and encouraged "the plaintiffs to carefully examine their allegations and their rights under the law related to those allegations before filing an identical lawsuit anywhere else."

[4]Although the plaintiff filed a motion to amend the complaint, which was thereafter granted, the plaintiff did not actually file the amended complaint that was attached to its motion.

simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence, which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir.1996).

### III. Motion for summary judgment and applicable law

#### A. Manufacturer liability

Plaintiff asserts a breach of implied warranty of merchantability cause of action. Generally, a breach of implied warranty action is barred by a four-year statute of limitation. *See* Tenn. Code Ann. § 47-2-725(1) & (2); *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 491-92 (Tenn. 1975). Under this statute of limitation, the plaintiff was required to file any breach of implied warranty action within four years of CCI's tender of delivery of the vehicle to LazyDays. *Id.* It is undisputed that CCI tendered delivery of the motor home to LazyDays on March 28, 2000. It is also undisputed that Ward Adventures did not file suit until May 5, 2005, which is over five years after CCI sold the motor home. Plaintiff did not present any facts and/or argument in opposition to defendant's statute of limitation defense. Thus, plaintiff's breach of implied warranty claim as to CCI is barred by the statute of limitation, leaving no need to further discuss CCI's additional arguments.

Plaintiff's claims as to breach of express warranties are also dismissed. The actions of CCI as set forth by plaintiff that allegedly amount to an express warranty consist of the statements made by Lee, CCI's agent, at a trade show that took place two years before the plaintiff bought the subject motor home as well as promotional materials/advertisements offered by CCI to the public. The plaintiff seems to dismiss the fact that the subject motor home was pre-owned. The representations made by Lee and statements contained in advertisements are in reference to new model coaches manufactured by CCI. While a good argument can be made that the representations of CCI are mere puffing, the Court need only find that it is not reasonable to assume that a company or entity must take responsibility for the neglect and damage to pre-owned products, absent a written warranty that accompanies the product, to dismiss the breach of express warranty claim. Both express warranties had expired before the plaintiff purchased the motor home. Mr. Pietrowski admits in his deposition that he assumed that the written warranties had expired before the time of plaintiff's purchase. Simply stated, the representations and statements with respect to model CCI coaches do not create an express warranty to the subject pre-owned motor home. Thus, plaintiff's breach of express warranty claim is dismissed.

Plaintiff's claims under the TCPA are likewise dismissed. In order to "recover under the TCPA, a plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated.'" *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (*citing* Tenn. Code Ann. § 47-18-109(a)(1)). In short, the

plaintiff must prove that defendants' actions or statements were either deceptive or unfair as defined by the TCPA. A deceptive act "is one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact." *Id.* at 116. In other words, a deceptive act "is a material representation, practice or omission likely to mislead a reasonable consumer." *Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (Tenn. 1997) (*quoting Bisson v. Ward*, 628 A.2d 1256, 1261 (Vt. 1993)). The concept of unfairness under the TCPA involves a layered analysis as "an act or practice will not be deemed unfair unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." *Tucker*, 180 S.W.3d at 116-117 (quoting 15 U.S.C. § 45(n)).

Plaintiff asserts violations of the TCPA related to CCI's conduct regarding repairs; CCI's failure to disclose defects or damage to the motor home; and CCI's representations to consumers that its product has characteristics, uses, benefits, or qualitites that the product does not in fact have. As mentioned above, CCI's representations of characteristics, uses, benefits, or qualitites are in relation to a new motor home coach, not in reference to the subject pre-owned motor home. As to the remaining arguments, the Court finds that plaintiff's TCPA claim fails as a matter of law because it is barred by the applicable statute of limitation and statute of repose. With regard to the limitation of action rules, the TCPA provides as follows:

> Any action commenced pursuant to § 47-18-109 shall be brought within one (1) year from a person's discovery of unlawful act or practice, but in no event shall an action under § 47-18-109 be brought more than five (5) years after

9

the date of the consumer transaction giving rise to the claim for relief.

Tenn. Code Ann. § 47-18-110. It is undisputed that the consumer transaction involving the subject motor home occurred on March 28, 2000 when CCI sold the motor home to LazyDays. As such, the statute of repose expired on March 28, 2005. As previously mentioned, the plaintiff did not file this lawsuit until May 5, 2005. Moreover, the plaintiff's TCPA claim is barred by the one-year statute of limitation. *Id.* The plaintiff states that it discovered the alleged problems with the motor home "shortly after" it was purchased on May 7, 2002. In fact, in its response brief, the plaintiff admitted that it "began experiencing serious problems with their (sic) motor home immediately after purchasing the motor home."

As to an alleged failure to repair that constitutes deceptive and unfair practices under the TCPA, it appears that the repairs to the motor home were performed by CCI in the Fall of 2003. Plaintiff submits that it discovered deceptive and unfair conduct of CCI in failing to repair in February of 2004 when LazyDays advised plaintiff that the motor home's front end had never been aligned. Further, plaintiff states that LazyDays successfully performed the alignment as well as other items that CCI failed to repair. The Court finds that when the plaintiff discovered CCI's alleged deceptive and unfair conduct in February of 2004, the plaintiff had one year in which to file its TCPA action. However, the plaintiff failed to do so. Plaintiff does not offer facts or evidence in opposition to defendant's statute of limitation argument. Accordingly, in sum, plaintiff's TCPA claim fails as a matter of law, and no further discussion is warranted as to defendant's remaining arguments with regard to

plaintiff's TCPA claims.

Plaintiff also asserts claims under the MMWA. The MMWA provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. §2310(d)(1). To bring a breach of warranty claim under the MMWA, a plaintiff must show: (1) that the goods are subject to a warranty and are nonconforming; (2) that the seller was given a reasonable opportunity to cure the defects; and (3) that the seller failed to repair the defects within a reasonable time or within a reasonable number of attempts. *Abele v. Bayliner Marine Corp.,* 11 F.Supp.2d 955, 961 (N.D.Ohio 1997).

The MMWA is not without caveats, which can limit consumers' relief. For example, "implied warranties may be limited in duration to the duration of a written warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty." 15 U.S.C. § 2308(b). In this case, there is no evidence in the record to suggest that limiting the duration of the implied warranty to the duration of the limited written warranty was unconscionable, and plaintiff has not particularly asserted such argument. Further, CCI limited its implied warranties on the subject motor home in compliance with § 2308, providing as follows:

**ANY IMPLIED WARRANTY IS LIMITED IN DURATION TO THE**

**DURATION OF THIS WRITTEN WARRANTY WHERE PERMITTED BY LAW.**

CCI limited the duration of its written warranty, and thus any implied warranty, to 12 months on the house portion and 24 months on the chassis portion. As such, CCI's warranty on the house portion expired on May 5, 2001, and CCI's warranty on the chassis portion expired on May 5, 2002. By the time the plaintiff purchased the pre-owned motor home on May 7, 2002, all of CCI's warranties had expired. As a result, there is no viable cause of action on the implied warranty claim under the MMWA. *Vizcarra Pellot v. Ford Motor Co.*, 263 F. Supp.2d 303, 310 (D.P.R. 2003) (stating that "[a] condition precedent to an action under the MMWA is that the warranty must not have expired or run its course" and that, "[i]f the warranty has expired, then the warrantor no longer has a duty towards the consumer and the consumer may not invoke the MMWA and its remedies").

In addition, it once again appears that the plaintiff runs awry with regard to the statute of limitation. Although the MMWA does not contain a statute of limitation, claims under the MMWA are subject to the statute of limitation under the state law that is most analogous. *See Lowe v. Volkswagon of America, Inc.*, 879 F. Supp. 28, 30 (E.D. Pa. 1995). If the claim under the MMWA is for breach of implied warranty, then the most analogous state law is the implied warranty law under Tennessee's UCC. *See* Tenn. Code Ann. § 47-2-725; *Lowe*, 879 F. Supp. at 30. As discussed above, the statute of limitation is four years from the date that CCI sold the motor home to LazyDays, which was March 28, 2000. The statute of limitation, therefore, expired well before the plaintiff filed a MMWA claim against CCI on May 5, 2005.

Lastly, the Court considers the plaintiff's breach of contract claim. The plaintiff does not particularly and completely set forth its allegations with reference to breach of contract in its complaint. However, viewing the complaint and pleadings in the light most favorable to the plaintiff, the plaintiff presents a question of fact as to whether CCI breached a repair contract as to the repairs CCI performed in the Fall of 2003.

B. <u>Dealership liability</u>

As to plaintiff's claims regarding warranties, Buddy Gregg asserts that it has successfully disclaimed any warranties as evinced by the purchasing documents, as well as disclaimed any warranties through the statements of its salesmen made to the plaintiff. Even though the purchase agreement states that the motor home is sold "As Is" except for the manufacturer's warranty, the plaintiff asserts that it relied upon statements made by Buddy Gregg's salesmen that the motor home was of good quality, which essentially amounted to warranties for the motor home; believed the purchase price of $285,000 included Buddy Gregg's duty to take care of any problems that may arise with the motor home in question; and felt that, because Buddy Gregg fixed the motor home at the time of purchasing, there was a warranty to fix these problems.

Plaintiff asserts that Buddy Gregg breached an implied warranty of merchantability. Pursuant to Tennessee Code Annotated § 47-2-314, "[u]nless excluded or modified (§ 47-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Tennessee Code

Annotated § 47-2-316 delineates the procedure by which any disclaimer of warranties must be made and states in pertinent, as follows:

> (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are not warranties which extend beyond the description on the face hereof."

> (3) Notwithstanding subsection (2):

>> (a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is," "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty....

In construing the Tennessee statutes, the "As Is" language coupled with other disclaiming language contained in the sales agreement is sufficient to disclaim any and all implied warranties, including an implied warranty of merchantability. *See Patton v. McHone*, 822 S.W.2d 608, 616 (Tenn. Ct. App. 1991). In other words, the purchaser is deemed to accept the item in its present condition with whatever faults it might possess. *Harper v. Mitchell*, 1985 WL 4040, at *3 n. 7 (Tenn. Ct. App. Dec. 4, 1985). The Court moreover notes that the plaintiff has not put forth sufficient argument in opposition to the implied warranty disclaimer. As such, plaintiff's claims for breach of implied warranties, including a warranty of merchantability, are dismissed.

As to the alleged creation and breach of an expressed warranty, the Court finds that

the plaintiff cannot prevail. The alleged statements of Buddy Gregg's agents that the motor home was in perfect condition, suggesting that Buddy Gregg would stand behind the motor home in the absence of a written warranty, were in direct contravention of the written disclaimer of warranties contained in the purchase agreement and, hence, were in violation of the parol-evidence rule and will not be considered as evidence in plaintiff's suit for breach of express warranties. Tenn. Code Ann. §§ 47-2-202 & 47-2-316.[5]

The parol evidence rule provides, in pertinent part, that "terms ... set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are in included therein may not be contradicted by evidence of any prior agreement ...." Tenn. Code Ann. § 47-2-202. Tennessee statutes specifically protect sellers "against false allegations or oral warranties by its provisions on parol and extrinsic evidence...." Tenn. Code Ann. § 47-2-316 cmt. 2. Under this rule, therefore, oral expressions that contradict a contract between the parties "are in violation of the parol evidence rule and may not be considered." *Perryman v. Peterbilt of Knoxville, Inc.*, 708 S.W.2d 403, 405 (Tenn. Ct. App. 1985). This specifically includes oral expressions that attempt to modify a disclaimer of warranties, including a disclaimer that the product is sold "As Is." *Id.* Therefore, the plaintiff's claims related to breach of express warranty will also be dismissed.

As to plaintiff's claims regarding alleged violation of the TCPA by Buddy Gregg, for the reasons stated above, plaintiff's claims are barred by the statute of limitation.

---

[5]The parol evidence rule is applicable to both plaintiff's express and implied warranty claims.

As to plaintiff's claim for violation of the MMWA, the facts of this case warrant dismissal. The MMWA does not prohibit or govern a seller's disclaimer of implied warranties unless the seller also provides a written warranty. 15 U.S.C. § 2308(a). The MMWA, in fact, governs only written warranties, and specifically not oral warranties, which remain within the realm of state law. In other words, the MMWA "supplies a federal remedy for breach of written and implied warranties, but not for oral express warranties, which remain the domain of state law." *Richardson v. Palm Harbor Homes, Inc.*, 254 F.3d 1321, 1325 (11th Cir. 2001). "The Act prescribes content and minimum standards for written warranties . . . but it is content to supplement state-law implied warranties only by prohibiting their disclaimer in certain circumstances." *Id.* (citing 15 U.S.C. § 2308).

An "As Is" designation is also sufficient to disclaim any warranties under the MMWA. *Anderson v. Newmar Corp.*, 319 F.Supp.2d 943, 948 (D. Minn. 2004) (there can be no claim under the Magnuson-Moss Warranty Act when warranties have been disclaimed).

The Court also considers the plaintiff's breach of contract claim. As mentioned above, the plaintiff does not particularly and completely set forth its allegations with reference to breach of contract in its complaint. Nevertheless, when the facts of the case as set forth in the pleadings are viewed favorably for the plaintiff, there is sufficient evidence to create a question of fact as to whether Buddy Gregg breached a contract to repair.

### C. Plaintiff's failure to respond to defendants' dispositive motions

Lastly, the defendants jointly move for dismissal of plaintiff's claims based upon plaintiff's repeated failures to response to their summary judgement motions. As the plaintiff has filed a response to the dispositive motions, the Court will deny the defendants' request for dismissal for lack of response.

## IV. Conclusion

For the reasons hereinabove set forth, defendants' motions for summary judgement [Docs. 14, 16, and 26] are **DENIED in part** and **GRANTED in part**. In particular, defendant Buddy Gregg Motor Homes, Inc.'s motion for summary judgment [Doc. 14] is **DENIED** with regard to plaintiff's breach of contract for failure to repair claim and **GRANTED** as to the remaining claims. Defendant Country Coach Inc.'s motion for summary judgment [Doc. 16] is **DENIED** with regard to plaintiff's breach of contract for failure to repair claim and **GRANTED** as to the remaining claims. Lastly, defendants' joint motion for summary judgement [Doc. 26] is **DENIED**. The parties will prepare the case for trial.

**IT IS SO ORDERED.**

          **ENTER:**

          s/Thomas W. Phillips
          UNITED STATES DISTRICT JUDGE